UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER OLIVIA SLOAN, an individual, et al.,

Plaintiffs,

v.

PORT OF SEATTLE, a municipal corporation, STEPHEN METRUCK, an individual, and KATIE GERARD, an individual,

Defendants.

CASE NO. 2:25-cv-00020-TL

ORDER OF DISMISSAL WITHOUT PREJUDICE

This matter is before the Court on its own motion. On July 13, 2026, the Court issued an Order staying upcoming deadlines and requesting further briefing on two questions related to the Court's exercise of supplemental jurisdiction in the wake of Plaintiff Kelly Wolf's voluntary dismissal of all her claims, including the only remaining federal claim in this action. Dkt. No. 50. Having considered the Parties' briefing on the Court's questions (Dkt. Nos. 52 (Defendant), 53

(Plaintiffs)),[1] the Court DECLINES to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) and DISMISSES the remaining claim in this case.

## I. BACKGROUND

The Court assumes familiarity with the facts of this case, which was brought by seven former employees of the Port of Seattle ("the Port") whose employment ended after they sought, and were denied, workplace accommodations for religiously based objections to the Port's COVID-19 vaccine requirement. *See* Dkt. No. 20 (Order on Motion to Dismiss) at 3–10. All Plaintiffs brought a common-law claim against the Port for violation of the right to privacy (Dkt. No. 11 (Second Amended Complaint) ¶¶ 8.1–8.13) and three distinct claims against the Port for religious discrimination under the Washington Law Against Discrimination ("WLAD") (*id.* ¶¶ 4.1–7.12). Two Plaintiffs, Jennifer Olivia Sloan[2] and Kelly Wolf, also brought a civil rights claim against the Port and two of its employees under 42 U.S.C. § 1983 for violation of their right to free exercise of religion as guaranteed by the First Amendment of the United States Constitution ("Free Exercise claim"). *Id.* ¶¶ 9.1–9.12.[3]

Although supplemental jurisdiction was not previously invoked in the complaint, *see id.* ¶ 2.2 (alleging federal-question jurisdiction), the basis for the Court's jurisdiction over the right to privacy and WLAD claims could only have been supplemental jurisdiction under 28 U.S.C. § 1367. Supplemental jurisdiction is available to the district courts "over all other claims that are

---

[1] The Court appreciates that counsel for the Parties conferred about the Court's request for supplemental briefing prior to filing their responses. The Court also thanks counsel for the thoughtful, thorough, and helpful briefing submitted by both sides.

[2] Because two Plaintiffs share the surname "Sloan," and noting that Plaintiff Jennifer Olivia Sloan was known at work by her middle name (*see, e.g.*, Dkt. No. 13 (Philips Decl. and Exhibits) at 106 (exemption letter)), the Court refers to her as "Plaintiff Olivia Sloan."

[3] Because the Free Exercise claim has been dismissed, and no other claim was brought against the individual Defendants, the Port is the only Defendant still actively litigating this action. Therefore, where used in the singular, "Defendant" in this order refers only to the Port.

so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Supplemental jurisdiction may "include claims that involve the joinder or intervention of additional parties." *Id.* In this case, only Plaintiffs Wolf and Olivia Sloan asserted a federal claim, specifically their Free Exercise claim. Plaintiffs Wolf and Olivia Sloan's remaining claims, and all other Plaintiffs' claims, were purely state-law claims that formed part of the same case and controversy as the Free Exercise claim in that they challenged the same COVID-19 vaccination policy adopted and implemented by the Port. *See* Dkt. No. 11 ¶¶ 4.1–8.13.

On September 30, 2025, on Defendants' motion (Dkt. No. 12), the Court dismissed several claims in this case. Dkt. No. 20. Specifically, the Court dismissed with prejudice the WLAD failure-to-accommodate claim only as to Plaintiff John Hall, as well as the other two WLAD claims and the right-to-privacy claim as to all Plaintiffs. *Id.* at 30. As for Plaintiffs Wolf and Olivia Sloan's Free Exercise claim, the Court dismissed it with prejudice only to the extent, if any, that it included a facial challenge to the Port's COVID-19 vaccination policy. *Id.* Plaintiff Wolf's as-applied challenge to the policy survived the motion to dismiss. *Id.* Plaintiff Olivia Sloan's as-applied Free Exercise claim was dismissed without prejudice, and she was given leave to amend the complaint to remedy the deficiencies of that claim. *Id.* However, Plaintiff Olivia Sloan opted not to amend her Free Exercise claim by the deadline set by the Court, leaving only the following claims in the case: Plaintiff Wolf's as-applied Free Exercise claim, and Plaintiffs' WLAD failure-to-accommodate claim, which Defendants had not challenged (except as to Plaintiff Hall).[4] The failure-to-accommodate claim was brought by all remaining Plaintiffs:

[4] The Court dismissed Plaintiff Hall's failure-to-accommodate claim upon finding that he had not suffered an adverse employment action, which is a required element of all WLAD claims. *See* Dkt. No. 20 at 1–15.

Olivia Sloan, Derek Sloan, Vetle Strand, Michele Fideler, Kelly Wolf, and Gail Abe. Dkt. No. 11 ¶¶ 4.1–4.7.

On April 10, 2026, Plaintiff Wolf voluntarily dismissed all her remaining claims. Dkt. Nos. 26, 27. In May 2026, on the Parties' stipulated motion (Dkt. No. 28), the Court bifurcated the remaining claims for purposes of dispositive motions and trial, according to three distinct "work departments" Plaintiffs belonged to when employed by Defendant. Dkt. No. 29. On July 14, 2026, shortly before the deadline for dispositive motions and motions challenging expert witness testimony,[5] the Court issued an Order staying Deadlines and Requesting Additional Briefing, asking the Parties for additional briefing on two questions: (1) "Whether the Court is *required* to dismiss the remaining claims without prejudice for lack of jurisdiction"; and (2) "Whether, if the Court is not required to dismiss the remaining claims, it should decline to exercise supplementa[l] jurisdiction over all or some of the Plaintiffs' claims under 28 U.S.C. § 1367(c)." Dkt. No. 50 at 2.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The district courts' subject-matter jurisdiction encompasses statutory grants of original jurisdiction, such as federal-question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332, as well as supplemental jurisdiction under 28 U.S.C. § 1367 for pendant claims over which federal courts lack original jurisdiction.

A federal court is obligated to "police" its subject-matter jurisdiction on an ongoing basis throughout litigation to ensure it remains "within the bounds the Constitution and Congress have

[5] At the time the Court issued its Order, Defendant had already filed two motions for summary judgment (Dkt. Nos. 30, 38), and one motion to exclude Plaintiffs' expert (Dkt. No. 47).

prescribed." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see also Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) ("[F]ederal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists."). When a "district court has dismissed all claims over which it has original jurisdiction," it may continue to exercise supplemental jurisdiction over the remaining claims in the case, or it may decline to do so. 28 U.S.C. 1367(c)(3). However, when a Plaintiff amends a complaint to "eliminate[] the federal-law claims that [granted original jurisdiction], leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025). "Withdrawals of individual claims against a given defendant" are construed as amendments governed by Federal Rule of Civil Procedure 15 and are therefore subject to. *Baldwin ex rel. K.B. v. Kalispell Sch. Dist. #5*, 763 F. Supp. 3d 1174, 1176 (D. Mont. 2025) (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005)).

## III. DISCUSSION

### A. Whether the Court Lacks Supplemental Jurisdiction After the Voluntary Dismissal

Upon review of the Parties' briefing, the Court agrees with the Parties that supplemental jurisdiction is available over the WLAD failure-to-accommodate claim and that the Court is not required to dismiss the claim. Although Plaintiff Wolf's voluntary dismissal of her Free Exercise claim means her claim is "gone for good," *see* Dkt. No. 53 at 7, Plaintiff Olivia Sloan's Free Exercise claim (which was dismissed by the Court) still exists and could be revived on appeal. This is true even though Plaintiff Olivia Sloan opted not to amend the claim when given an opportunity to do so. *See* Dkt. No. 52 at 6 n.2 (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1064–66 (9th Cir. 2004)).

The Court does not decide what would have been the effect of Plaintiff Wolf's departure from the case if Plaintiff Olivia Sloan had *not* had a federal claim of her own, nor what would

have been the effect of a voluntary dismissal by Plaintiff Wolf *only* of her Free Exercise claim (although these are certainly interesting questions). It is true that "[a] party's departure can, in the right circumstances, carry jurisdiction away with it." Dkt. No. 52 at 5 (citing *Royal Canin*, 604 U.S. at 35–38). It may also be true that if Plaintiff Olivia Sloan had had an additional federal claim that she voluntarily dismissed once it was the last remaining claim in the case, she (and perhaps her co-plaintiffs as well) would be unable to rely on the claims earlier dismissed by the Court as continuing to anchor federal jurisdiction because, after amendment, "the new pleading supersedes the old one," and the "original pleading no longer performs any function in the case." *Royal Canin*, 604 U.S. at 35 (citation modified). But Plaintiff Olivia Sloan had her own single federal claim that was dismissed by the Court and, as Plaintiffs point out, Plaintiff Wolf's *entire* departure from the case is not treated as an amendment of the complaint. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687–88 (9th Cir. 2005). Thus, Plaintiff Olivia Sloan's Free Exercise claim, it would seem, remains in this case. Under this specific combination of circumstances, the Court finds that it may continue to exercise supplemental jurisdiction over the remaining claims.

**B. Whether the Court Should Decline Jurisdiction as a Matter of Discretion**

Having assured itself that it *can* exercise supplementary jurisdiction, however, the Court must consider whether it *should* do so. The applicable statute permits a district court to decline supplemental jurisdiction where (1) a state-law claim "raises a novel or complex issue of State law," (2) the state-law claim "substantially predominates" over the federal claims, or (3) the district Court has dismissed all the federal claims, as well as (4) for "other compelling reasons" in "exceptional circumstances." 28 U.S.C. § 1367(c). If any one of these statutory predicates is present, the Court looks at judicial economy, convenience, fairness, and comity (the "*Gibbs* values"). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). A district court

has broad discretion to retain or decline supplemental jurisdiction, and its exercise of discretion will rarely be disturbed on appeal. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991) ("Supreme Court and Ninth Circuit precedent teaches us that the district court is in the best position to judge the extent of resources invested in a case and that, therefore, the district court's discretion ought not be lightly disturbed."); *but see Arroyo v. Rosas*, 19 F.4th 1202, 1204–05 (9th Cir. 2021).[6] The Supreme Court has counseled, however, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

**1. At Least Two Statutory Predicates Allow the Court to Decline Jurisdiction**

The Court may decline to exercise supplemental jurisdiction over Plaintiffs' WLAD claims for at least two reasons: state-law claims in this case "substantially predominate[]" over the federal claims, 28 U.S.C. 1367(c)(2), and the district Court has dismissed all the federal claims, *id.* § 1367(c)(3).[7] The first of these has always been true, at least with respect to the quantity of claims (and likely also in the time and resources required to address them, given the fact-intensive nature of the WLAD claims). The second became true on April 10, 2026, when Plaintiff Wolf's departure left only a single already-dismissed federal claim present in the case. Because the Court *may* decline jurisdiction, it turns now to the *Gibbs* factors to determine whether it *should*.

---

[6] In *Arroyo*, the Court of Appeals found that a district court abused its discretion in declining jurisdiction over claim under California's Unruh Act because "the district court effectively completed its adjudication of this entire case," including a finding of liability under the Americans with Disabilities Act ("ADA"), "*before* it considered the question of supplemental jurisdiction[.]"19 F.4th at 1205 "Because any violation of the ADA is automatically a violation of the Unruh Act," *id.* at 1204, the *Gibbs* values "at *that* point all overwhelmingly favored retaining jurisdiction and entering the foreordained judgment on the Unruh Act claim," *id.* at 1205.

[7] Plaintiffs also argue that the Court may decline jurisdiction under 28 U.S.C. 1367(c)(1) because the WLAD claim "raises a novel or complex issue of State law." Dkt. No. 52 at 7–8, *see infra* Section III.B.2.a.

**2. The *Gibbs* Values Weigh in Favor of Declining Jurisdiction**

**a. Economy**

As the Parties note, the factor of judicial economy turns on "whether the federal court has expended substantial resources resolving the merits of the state-law claims." *United Fin. Cas. Co. v. Aman Expedite, LLC*, No. C23-587, 2026 WL 234064, at *3 (W.D. Wash. Jan. 28, 2026) at *3 (quoted by Dkt. No. 52 at 10, Dkt. No. 53 at 12). But as Plaintiffs point out, this Court has expended essentially no resources on the remaining Plaintiffs' failure-to-accommodate claims, because they were not a subject of Defendants' Motion to Dismiss. *See* Dkt. No. 52 at 10–11; *see generally* Dkt. No. 12. While the *Parties* have doubtless invested extensive time into the WLAD claims throughout discovery and recently in preparing for dispositive motions practice, the *Court* "has not adjudicated any motion directed at the merits of the remaining WLAD claims: the Port's summary judgment and expert motions were filed shortly before the Court's stay, responsive briefing has not been submitted, and the Court has invested no resources in them." Dkt. No. 52 at 10–11. Defendant points out "the Court has presided over a related Port of Seattle COVID-19 employment lawsuit through summary judgment/the entry of final judgment and ruled on Defendants' Motion to Dismiss in this matter," giving the Court a "deep familiarity with the core facts underlying this dispute." Dkt. No. 53 at 13 (citing *Moriarty v. Port of Seattle*, No. C23-1209, 2025 WL 3295346 (W.D. Wash. Nov. 26, 2025) (Lin, J.)). Although it is true that the Court is familiar with many of the facts and related legal issues from its work on the other claims in this case and in *Moriarty* (which involved not WLAD claims, but analogous federal employment-discrimination claims under Title VII), all work on Plaintiffs' individual and fact-intensive failure-to-accommodate claims is yet to come, and no effort by the Court would have been wasted if a state court were to now take up those claims instead. This is especially true now that the bifurcation of the claims for summary judgment and trial creates a situation where the

court is faced with, in Plaintiffs' words, "essentially three separate lawsuits, each governed entirely by Washington law, and each requiring its own summary judgment record and trial."[8] Dkt. No. 52 at 10. The Court agrees that "[n]othing about that structure is better accomplished in federal court." *Id.* Therefore, judicial economy weighs in favor of declining jurisdiction.

**b. Convenience**

Because all the Parties and attorneys in this case are located within the geographical bounds of the District (and therefore also within the jurisdiction of King County Superior Court), there is no obvious practical difference that makes litigating in State Court more inconvenient than proceeding in this District. Certainly, a dismissal from one forum, requiring the parties to start new proceedings elsewhere, will always be inconvenient. But the inconvenience here is not immense: as Plaintiffs point out, the discovery the Parties have already completed "travels with them, and briefing already prepared can be repurposed in superior court with little waste." Dkt. No. 52 at 11.

Defendant points to a number of cases where district courts have decided to retain discretionary jurisdiction over pendant claims, largely on the basis that dismissal at a late stage "may not be fair." Dkt. No. 53 at 12 (quoting *Hansen v. Cal. Dep't of Corrs.*, 920 F. Supp. 1480, 1500 (N.D. Cal. 1996)). But, given the *Cohill* court's clear statement that dismissal at this procedural posture is the norm, the Court must see something more than the ordinary inconvenience of dismissal or remand to find that this factor weighs more than slightly in favor of retaining jurisdiction.

---

[8] The Court asked the Parties to "discuss the effect, if any, of the recent bifurcation of the remaining claims for dispositive motions and trial." Dkt. No. 50 at 2 (citing *Aman*, 2026 WL 234064, at *2). The Court is convinced by both Parties' briefing that the bifurcation does not effect the availability of supplemental jurisdiction or change the applicable standard. The practical effect of that bifurcation is, however, relevant to the Court's consideration of judicial economy, which compares the Court's past and future investment in the WLAD claims.

Defendant identifies three practical inconveniences: first, that dismissal would "create[e] a significant claim-splitting issue" (Dkt. No. 53 at 10); second, that Defendant would have to reformulate its motion to exclude Plaintiffs' expert (Dkt. No. 47) to address the *Frye* standard used by Washington courts instead of the *Daubert* standard used by federal Courts (Dkt. No. 53 at 12–13); and third, that dismissal would lead to further delay, especially because King County Superior Court's local rules require oral argument for summary judgment (*id.* at 12). As to claim-splitting, the Court does not share Defendant's concern that "to ensure timely claims, Plaintiffs would need to initiate new state court proceedings on their [failure-to-accommodate] claims" while simultaneously pursuing any appeal of the Court's earlier dismissals. *Id.* at 10. Under 28 U.S.C. § 1367(d), the period of limitations for any claim asserted on the basis of supplemental jurisdiction is tolled "while the claim is pending in federal court," *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018), which should include any applicable appeal. As to Defendant's second and third points, the Court finds these to be minor inconveniences that would be typical in many post-discovery dismissals or remands. Although the state court's oral argument requirement may strike Defendant as burdensome, the Court does not find that the normal operation of state-court procedural rules is prejudicial or unduly burdensome. The factor of convenience is either neutral or weighs very slightly toward retaining jurisdiction.

**c. Fairness**

Neither Party discusses fairness as distinct from convenience, and there is no suggestion that declining jurisdiction would favor one Party over the other, allow either Party to skirt procedural rules, or otherwise prejudice one side. Therefore, the Court finds this factor to be neutral.

//

//

**d. Comity**

The final value, comity, generally points toward letting state courts resolve state-law questions, which ultimately benefits the Parties as well. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") As Plaintiffs note,

> The remaining claims of this case are a dispute between five Washington residents and a Washington municipal corporation over the meaning and application of Washington's civil rights statute, in a doctrinal area the Washington Supreme Court has twice taken up in the last decade [or so] and recalibrated as recently as 2024.

Dkt. No. 52 at 14 (first citing *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 501–02, 325 P.3d 193 (2014); and then citing *Suarez v. State*, 3 Wn.3d 404, 552 P.3d 786 (2024)). Defendant rightly points out that the more recent of these rulings affirmed that WLAD claims are subject to the same "undue hardship" analysis as analogous federal claims under Title VII. *See* Dkt. No. 53 at 13 (citing *Suarez*, 3 Wn.3d at 409). However, as Plaintiffs points out, the fact that the Washington Supreme Court has been shaping jurisprudence on the "undue hardship" defense for WLAD failure-to-accommodate claims as recently as 2024 underscores that the WLAD remains a state law whose jurisprudence is evolving and whose clarification is best overseen by the state courts. Dkt. No. 52 at 7–8 (citing *Suarez*, 3 Wn.3d at 409). Therefore, the value of comity points strongly toward declining jurisdiction over the WLAD failure-to-accommodate claims.

* * *

For the foregoing reasons, the Court finds that the factors of judicial economy and comity weigh strongly in favor of declining supplemental jurisdiction, while the remaining values are neutral or weigh only slightly in favor of retaining jurisdiction. On balance, the Court finds good cause to decline supplemental jurisdiction and dismiss Plaintiffs' remaining WLAD claims.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) The Court DECLINES supplemental jurisdiction over Plaintiffs' WLAD Religions Discrimination–Failure to Accommodate claim (Count 1 in the Second Amended Complaint).

(2) The WLAD Religions Discrimination–Failure to Accommodate claim, as brought by Plaintiffs Jennifer Olivia Sloan, Derek Sloan, Vetle Strand, Michele Fideler, and Gale Abe, is DISMISSED WITHOUT PREJUDICE.

(3) The pending motions (Dkt. Nos. 30, 38, 47) are DENIED WITHOUT PREJUDICE AS MOOT.

(4) The trial date and all remaining deadlines are VACATED.

(5) Judgment will be entered separately in accordance with this Order.

Dated this 30th day of July, 2026.

Tana Lin
United States District Judge